JOHN J. STAMLER AND NICHOLAS LA VECCHIA, RECEIVERS OF NEW JERSEY BANKERS SECURITIES COMPANY, RESPONDENTS, v. HARRY H. WEINBERGER, APPELLANT.

Submitted May term, 1932—Decided October 17, 1932.

For the appellant, *Minturn & Weinberger*.

For the respondents, *Leber & Ruback*.

The opinion of the court was delivered by

LLOYD, J.   The actions in these cases were to recover installments of interest on a note for $2,300,000 given to the New Jersey Bankers Securities Company by Weinberger in satisfaction of claims which the company had against him based on mismanagement of its affairs.   An identical answer was set up to each action.   On motion and affidavits the answers were stricken out and judgment entered for the plaintiffs.   The defendant appeals and the actions were consolidated in this court for purposes of the appeal and will be so dealt with.

From the uncontradicted affidavits filed in support of the motions, it appears that the company is a New Jersey corpo-

ration incorporated in 1927. As its name implies it was a financial institution, the result of a plan devised by Weinberger and in which he was the moving spirit, its directors being employes or associates in his law office. Its plan of action involved principally the purchases and consequent control of other banking institutions. The company started its business transactions at its first meeting by the purchase of large blocks of stock owned by Weinberger in other corporations. From time to time the board of directors was changed —enlarged by the substitution or addition of well known citizens; the charter was amended to increase the number of shares from three hundred thousand to two million and a sales campaign inaugurated for their sale, the latter characterized by questionable methods both in law and morals, including the purchase of its own stock at ruinous prices to boost the market for the shares and to bolster the sales campaign. This and other conduct of its affiairs attracted public attention, became the subject of legislative investigation and finally induced the filing of a stockholders' bill in Chancery seeking the removal of the officers and directors, an accounting by them for malfeasance and in addition an accounting by Weinberger for moneys received by him in excess of the true value of certain securities sold by him to the company.

The suit developed damaging evidence of mismanagement and resulted in the resignation of Weinberger both as president, to which office he had been elected, and as a director, and also the resignation of certain of the other officers and directors. New officers and directors were elected and the new management made demands on the old officers and directors for the refund of the moneys representing the losses resulting from this mismanagement. Suit was later threatened to enforce the claim and this resulted in an offer by Weinberger to compromise by giving the note on which installments of interest were claimed in the pending actions, the company in return to surrender, on payment of the note and interest, certain stock and other collateral, return the note and cancel all claims against the old officers and directors. The offer was accepted by the directors, ratified by the stock-

holders, approved by the Chancellor and the note for $2,300,000 delivered by Weinberger to the company. Later receivers were appointed by the Chancellor and the note came into their hands as assets of the corporation.

The note was dated October 4th, 1928, and called for the quarterly payment of interest, one installment of which fell due on June 4th, 1930, and was not paid. Suit was brought thereon and resulted in a judgment for the plaintiffs. To that action defenses were filed and on motion struck out. The answer was identical with the ones now before us.

The first answer here presented is that at the time the settlement was made it was agreed that the stock forming in part the consideration of the note, was represented by the new president to be worth $11 per share; that the continued existence of the corporation was necessary to the performance of the contract; that on May 20th, 1930, the Court of Chancery intervened in the affairs of the company and appointed receivers and thereby destroyed the subject-matter of the contract, namely, the value of the stock. The answer goes on to say in contradiction that the capital stock has been sufficient to satisfy its debts and obligations and leave a considerable excess.

The first defense is wholly without legal substance. There was no allegation that the statement, if made by the president, was untrue at the time and there is no verification of the statement being made. On the contrary Stamler, the president, now receiver and plaintiff, expressly asserted in his affidavit that the proffer of settlement came wholly from Weinberger.

The second and third defenses are substantially to the effect that by taking the company out of the hands of its officers in May, 1930, the subject-matter of the consideration was destroyed. This from the affidavits is not the fact. The stock which the receiver must return on payment of the note is still in existence and susceptible of surrender. If its value is impaired it is the fault of the appellant and his associates and not that of the Court of Chancery which sought to protect and preserve it.

It is next and finally set forth that certain conduct on the part of the officers in cancelling subscriptions for stock other than those of the defendant prejudiced the defendant by depriving him as a stockholder of having the right to have the moneys otherwise subscribed paid into the treasury.

This phase of the answer is untrue in fact and unsound in law. What happened, according to the affidavits in the case, was that the new officers and directors found that Weinberger and his dummy directors had been setting up a fictitious market for the company's stock and had opened a large number of offices to make sales. There was the greatest fraud and deception practiced by them on the purchasers and the new officers did only what they in good morals should do and what undoubtedly they could have been compelled to do by legal process, in cancelling the subscriptions so obtained.

At all events this would not be an answer even if true and wrongful; while it might create a basis of counter-claim for damages, it would not be an answer to a suit on the note. This and the further contention that the stock of the Hobart Service Trust Company mentioned in the agreement was depressed by the officers and directors, likewise, if true, might form a basis of counter-claim but would not be a defense.

We agree with the further contention of the respondent that the adjudication by the court on the installment of interest falling due in June is *res adjudicata* in the present action. The defendant pleaded the same defenses as are here set up and the additional one that it was his purpose to go into Chancery to have the contract rescinded. The answer there was, and those filed here are, to the note in its entirety, and do not consist of matters relating to the individual installments of interest. When the answer was struck out it was therefore an adjudication by a court of competent jurisdiction on the precise point here presented and an adjudication adverse to the appellant. This being true, he is forever thereafter debarred from raising the same contention in any other suit growing out of the same subject-matter. If this were not so the defendant could every three months set up the same defenses and compel indefinite litigation over a

question already judicially passed on. The mere statement of the proposition demonstrates its unsoundness.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.